THE HONORABLE, THE ASSEMBLY Legislature
By 1973 Assembly Resolution 44 you have asked for my opinion as to the legality of the voting procedures of the joint committee for review of administrative rules (committee) with particular reference to that committee's vote on July 9, 1973, dealing with MVD 24.03 (5).
The committee is established by sec. 13.56, Stats., and is composed of four senators and five representatives. You advise that the assembly has rules dealing with the right of an absent committee member to vote and the holding open of an executive session to permit an absent member to vote, but that the senate has no rules on these subjects. I am advised of no joint resolution establishing procedural rules for the committee, and it is evident that the rules of one house cannot bind a joint committee of both houses.
The first question is whether an absent committee member may vote. The answer is no.
Unquestionably, no action can be taken by the committee without a quorum. Section 13.45 (5), Stats., provides:
 "RULES OF PROCEDURE; QUORUM. Unless otherwise provided by law, every legislative committee or committee on which there are legislative members selected by *Page 169 
either house or the officers thereof may adopt such rules for the conduct of its business as are necessary, but a majority of the members appointed to a committee shall constitute a quorum to do business and a majority of such quorum may act in any matter within the jurisdiction of the committee."
Thus, the committee is empowered to adopt a rule answering this question, but has not done so. Accordingly, it is necessary to look to the common law.
At common law, the quorum was required to be present. The word "quorum" evolved from the rule of the King of England by which he designated certain justices to keep the peace and provided that:
 ". . . any two or more of them [may] inquire of and determine felonies and other misdemeanors, in which number some particular justices, or one of them, are directed to be always included, and no business to be done without their presence." (Emphasis added.) See Snider v. Rinehart (1892), 18 Colo. 18, 31 P. 716, 718.
In Wheeler v. River Falls Power Co. (1906), 215 Ala. 655,111 So. 907, 909, the court said:
 ". . . The sum of it is that . . . a majority of the members must attend any meeting of the committee called for legislative purposes, otherwise there is no committee competent to act, but a majority of those present, when legally met, may bind all the rest." (Emphasis added.)
In United States v. Ballin (1892), 144 U.S. 1, 6, 12 S.Ct. 507,36 L.Ed. 321, the court said:
 ". . . when a quorum is present, the act of a majority of the quorum is the act of the body." (Emphasis added.)
In Wheeler, supra, the court held that since a quorum must be present, absentee votes by mail could not be counted to make up a quorum. My research discloses no cases dealing with the situation where a quorum was present and an attempt was made to count the votes of members not present. It is my opinion, however, that to count such votes would contradict the common law principle, incorporated into sec. 13.45 (5), Stats., that a committee can act only through a majority of a quorum which is present. It is the act of *Page 170 
a majority of the quorum present which gives validity to committee acts.
The second question is the length of time, if any, which must be allowed for a roll call vote of the committee.
I am aware of no statutory or constitutional provisions which dispose of this question. The common law appears to have addressed itself only to the situation where members are in the legislative chamber. In Gaskins v. Jones (1942), 198 S.C. 508,18 S.E.2d 454, 456, the court said:
 ". . . As long as the members are present in the council chambers and have an opportunity to act and vote with the others, it is their duty to act, and they will be regarded as present for the purpose of making a quorum and rendering legal the action of the council."
I am aware of no requirement that the committee chairman must make a roll call or otherwise solicit the presence of absent members. Absent a requirement in the common law, the statutes, the Constitution and the procedural rules of the committee itself, it is my opinion that no time need be allowed for a roll call vote.
The third question is whether the committee's vote on July 9, 1973, concerning MVD 24.03 (5) was legal. I am informed that by a five to three vote the committee suspended MVD 24.03 (5); that by a six to two vote the committee voted to keep the roll call open to allow an absent member to vote by noon of the next day; that the absent member then voted making the vote six to three to suspend; and that later, because of questions as to this procedure, the committee again met and voted six to three to suspend. Whether the six to two vote was effective under sec. 1 3.45 (5), Stats., to enable the absentee vote to be counted and whether the final six to three vote cured any previous procedural irregularities need not be decided. For it is my opinion that the committee, regardless of its voting procedure, was without power to suspend those administrative rules.
Section 13.56 (2), Stats., provides that the committee may:
 ". . . suspend any rule complained of by the affirmative vote of at least 6 members. If any rule is so suspended, the committee shall as soon as possible place before the legislature, at any *Page 171 
regular session and at any special session upon the consent of the governor, a bill to repeal the suspended rule. If such bill is defeated, or fails of enactment in any other manner, the rule shall stand and the committee may not suspend it again. If the bill becomes law, the rule is repealed and shall not be enacted again unless a properly enacted law specifically authorizes the adoption of that rule. * * *" (See later amendments, ch. 90, sec. 5c, and ch. 162, sec. 1, Laws of 1973.)
One of my predecessors concluded that a proposal to repeal an administrative rule by joint resolution would be invalid if enacted. 43 OAG 350 (1954). Another of my predecessors concluded that a proposal to empower a committee of legislators to void an administrative rule would be invalid. 52 OAG 423 (1963) .
I am persuaded that those opinions are correct. The reasoning is that an otherwise valid administrative rule has the force of law. A law can be repealed or voided only by presentment of a bill to the governor so that he may have an opportunity to veto it. An administrative rule being a law, an attempt to void it without presentation of a bill to the governor usurps the prerogatives of the executive by circumvention. The determination that a rule is not valid is essentially a judicial question, and that function can be delegated to an administrative agency as a quasi-judicial duty only under appropriate standards which also provide the safeguard of judicial review. I have this day issued an opinion in response to 1973 Assembly Resolution 58 which discusses the authoritative basis for these conclusions.
Section 13.56 (2), Stats., contemplates that the administrative rule is not permanently voided but is suspended and "shall stand" only if the legislature fails to pass a law repealing the rule. The natural meaning of the word "suspend" implies that the administrative rule is voided in the meantime. Only the legislature, however, by presentment of a bill to the governor, has the discretion to prevent a valid law from taking effect. As stated in M., St. P. S.S. M.R. Co. v. Railroad Commission
(1908), 136 Wis. 146, 163, 116 N.W. 905:
 ". . . But neither the commission nor the court can be vested with discretion to determine whether the precedent law declared *Page 172 
by the legislature shall or shall not go into effect in particular cases."
By definition, if an administrative rule is valid it is a correct interpretation or application of a law. An attempt to void such a rule is to attempt to repeal the enabling statute protanto. Since this can only be done by presentment of a bill to the governor, I conclude that the committee is constitutionally without power to suspend an administrative rule which is otherwise valid notwithstanding sec. 13.56 (2), Stats., to the contrary.
I have struggled to find a construction of the word "suspend" which might save the constitutionality of this subsection. If such suspension merely was notice that the committee would present a bill to the legislature for enactment, this subsection probably would be constitutional. The American HeritageDictionary of the English Language (1969), p. 1296, however, defines "suspend" as follows:
 "1. To bar for a period from a privilege, office, or position, usually as a punishment: suspend a student from school. 2. To cause to stop for a period; interrupt: . . . 3.a. To maintain in an undecided state; hold in abeyance: suspend judgment. b. To render ineffective temporarily under certain conditions: suspend a sentence; suspend parking regulations . . . ." (Emphasis the dictionary's.)
I believe "suspend" as used in sec. 13.56 (2), Stats., means that the administrative rule is temporarily rendered ineffective.
Since a valid law can be rendered ineffective, temporarily or otherwise, only by the legislature presenting a bill to the governor, it is my opinion that the courts would hold that sec.13.56 (2), Stats., is unconstitutional to the extent it provides otherwise inasmuch as: (a) it purports to authorize a committee of the legislature to circumvent the constitutional prerogatives of a governor to veto a proposal to repeal a valid interpretation or application of a law, and (b) it fails to provide sufficient standards or the safeguards of judicial review essential to treating the committee as a reviewing agency to which has been lawfully delegated powers of a quasi-judicial nature.
RWW:CDH *Page 173