15353

GASKIN v. JONES
BROWN *ET AL.* v. SAME
HANNA v. SAME
(18 S. E. (2d), 454)

*Mr. Samuel Want, Mr. James S. Verner,* and *Mr. Sam Rogol,* all of Darlington, for appellants,

*Messrs. Willcox, Hardee, Houck & Wallace,* of Florence, for respondent,

January 12, 1942.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE G. DEWEY OXNER.

These three actions were tried together and relate to the office of county manager for Florence County. The governing board of this county consists of six members who are empowered to employ or elect a county manager. Respondent, F. F. Jones, was duly elected to this office for the year 1940 and served in that capacity. On January 2, 1941, a regular meeting of the board was held, at which appellant, John Hanna, claims that he was elected for the year 1941.

The first action is brought by a taxpayer and the second by three members of the governing board. In each of these actions it is sought to have the office declared vacant and to restrain respondent Jones from continuing to exercise the duties thereof. The third action is brought by Hanna, who claims to have been elected to the office, to have the office turned over to him.

By Act No. 835 of the Acts of 1932 (37 Statutes at Large 1441) a governing board for Florence County is established, consisting of six members. Under this Act, as amended in 1935 (39 Statutes at Large 440), the members of the board hold office for four years and "until their successors are nominated, appointed and qualified." It is further provided that said board "shall employ a county manager who shall hold office for a term of one year, who shall be subject to removal by the governing board at any time for just cause."

The questions presented are:

(1) Was appellant, Hanna, elected as County Manager for the year 1941?

(2) If not, did the office become vacant upon the expiration of the statutory term of Jones on December 31, 1940, or did he continue to hold over as an officer *de facto?*

The Circuit Judge held that Hanna was not elected and that Jones continued in office as an officer *de facto*. Appellants challenge these holdings by appropriate exceptions.

The two questions will be considered in the order stated.

On January 2, 1941, the Governing Board of Florence County convened in regular session at its office in the Court House at Florence with all members present. The meeting commenced around nine o'clock in the morning and continued in session until the late afternoon with the usual adjournment for lunch. A number of ballots were taken for the election of a County Manager and each resulted in three votes for Hanna and three for Jones. In other words, there was a consistent tie on every ballot and the same division existed in reference to other matters that came up which were related in any way to the election of County Manager. The County Attorney, who occupied a non partisan position, acted as temporary chairman a part of the time, but relinquished the chair after several ballots were taken because "nothing seemed to have been accomplished." The County Attorney also advised the Board that Jones would remain as a *de facto* County Manager in the event there was no election.

Very little was done by the Board at the afternoon session. The members largely just "sat around." In fact, the record discloses that except for the election in controversy, the session would not have been an extended one. Throughout the day there appeared to be a hopeless deadlock on the question of election of a County Manager.

Shortly after five o'clock in the afternoon, a motion was made to adjourn which resulted in a tie, the supporters of Jones voting for it and those of Hanna against it. A motion was thereafter made to have the County Attorney get a Court order for the County Treasurer to pay the 1940

claims. This motion likewise resulted in a tie. The three members who had voted for Jones thereupon withdrew from the meeting and retired. There is abundant testimony to the effect that these three members left because they were satisfied that nothing could be accomplished by continuing in session and the situation looked like it was going to develop into an endurance contest.

The three remaining members, who had voted for Hanna, continued in session and unanimously voted for Hanna as County Manager. These three members adjourned shortly after six o'clock.

When the three remaining members undertook to go into the election of County Manager, they made some attempt to get in touch with the three members who had withdrawn. However, they were able to get in touch with only one, who was still in the Court House but declined to return. The other two had left the Court House and were not reached.

The learned Circuit Judge found as a fact that at the time of the alleged election of Hanna one had been away five or ten minutes and the remaining two approximately an hour. He further found from the evidence "that at the time of the attempted election of Mr. Hanna the only members of the Board present were those shown by the minutes; and that the other three were neither actually or constructively present, and hence there was no quorum." The evidence fully sustains these findings of fact.

The following rules, applicable to the proceedings of a body of this kind, are well established:

In the absence of any statutory or other controlling provision, the common-law rule to the effect that a majority of a whole body is necessary to constitute a quorum applies, and no valid act can be done in the absence of a quorum. A majority of such a body must be present to constitute a Board competent to transact business. If a quorum is present, a majority of a quorum is sufficient to act and bind the entire body. *State v. Deliesseline,* 1 McCord, 52; Dillon on Municipal Corporations, 5th Edition,

Volume 2, Section 521; McQuillin on Municipal Corporations, 2d Edition, Volume 2, Sections 624 and 628. The members who are present at a meeting cannot by a mere refusal to vote defeat the action of the majority of those voting. McQuillin on Municipal Corporations, 2d Edition, Section 628; Thompson on Corporations, 3rd Edition, Volume 2, Section 1256. The last mentioned rule is accurately stated as follows in Dillon on Municipal Corporations, 5th Edition, Section 527: "But the courts have steadfastly adhered to the rule that when members are present at a meeting, a mere refusal to vote on the part of some of the members cannot defeat the action of the majority of those actually voting. As long as the members are present in the council chamber and have an opportunity to act and vote with the others, it is their duty to act, and they will be regarded as present for the purpose of making a quorum and rendering legal the action of the council."

It is contended by appellants that under the last mentioned principle, Hanna was elected. It is urged that the situation is the same as the failure of a member to vote when a quorum is present and that the unanimous vote of those who exercised their right to vote was binding on the others.

This principle, however, has no support in the evidence. The three members of the Board who favored Jones had left the room and, as found by the Circuit Judge, were neither actually nor constructively present.

The situation is different from that which prevailed in the Indiana case of *State ex rel. Walden v. Vanosdal,* 131 Ind., 388, 31 N. E., 79, 15 L. R. A., 832. In that case a regular meeting of six school trustees was held for the purpose of electing a County School Superintendent. The meeting convened at midday and continued in session until around midnight. After a number of ballots were taken, not resulting in an election, three of the members refused to act longer or take further part in the proceedings. There were a number of bystanders looking on and listening to the proceed-

ings. These three members withdrew from the place where the balloting was being held into the crowd of spectators, but did not leave the room. The Court held that a quorum was not broken under these circumstances although three of the members refused to vote. It was further held that where the three remaining trustees cast their ballots for a person, such a person was duly elected and the other trustees would be treated as present and not voting. The Court said: "The three trustees stepped from the part of the room occupied by them among the bystanders. They could not change from trustees to mere spectators in the same room when they still had an opportunity to act and vote with the others, and thus prevent an election. Being present, it was their duty to act. They were in fact present." The Court, however, made this pertinent observation: "If the facts showed that the three trustees had in fact withdrawn from the meeting, and gone from the room, so as to have in fact left but three trustees in session, it would present an entirely different question."

In the case of *State ex rel. Springs et al. v. Ellison,* 106 S. C., 139, 90 S. E., 699, 13 A. L. R., 130, there was a meeting of the stockholders of a domestic corporation. During the course of the meeting, some of the stockholders, apparently without any good reason, withdrew from the meeting, leaving, however, a sufficient number to constitute a quorum. The Court held that a quorum being present, the actions of those remaining were valid. An entirely different situation is presented here as those who remained were insufficient to constitute a quorum.

Counsel for appellants places considerable emphasis upon the decision of the United States Supreme Court in the case of *Z. & F. Assets Realization Corporation v. Hull, Secretary of State et al. (American-Hawaiian S. S. Company v. Hull, Secretary of State et al.),* 311 U. S., 470, 61 S. Ct., 351, 85 L. Ed. 288. That case involved a commission created to pass on claims to be paid by Germany. The commission consisted of one member appointed by the United States, another by Germany, and an umpire selected by the two

Governments. The umpire was to decide upon any matters concerning which the commissioners were unable to agree. The commission entered into the discharge of its work during the course of which the German commissioner withdrew. At the time of the withdrawal, he and the American commissioner were in disagreement upon the points in issue. Upon receiving notice of the next meeting of the commission, the German commissioner declined to appear. The umpire decided that a disagreement did exist between the two commissioners and that the jurisdiction of the commission could not be ousted by the withdrawal of the German commissioner after submission of the controversy and after the tribunal was engaged in the task of deciding the issues presented. In accordance with the power vested in the umpire, he passed upon the matter upon which the two commissioners were in disagreement and joined the American commissioner in signing an award. The questions here presented were not involved.

Finally, it is contended by appellants that, the meeting having started out with all members present, the withdrawal of some of the members while the meeting was in session could not deprive the remainder of the power to function. In passing upon this contention, it is well to bear in mind that at the time of this withdrawal the meeting had been in session during almost an entire day and it was reasonable to assume that nothing further would be accomplished by continuing with the meeting. The learned Circuit Judge made the following finding of fact: "The meeting had gone on all day without the slightest evidence that a continuation of the voting would produce any different result, and hence I am of the opinion that those withdrawing from the meeting were well justified in doing so, and that their action cannot be considered arbitrary, capricious or in any wise unreasonable."

We are not called upon to pass upon a situation where during the course of a meeting some of the members arbi-

trarily or without good reason withdrew leaving less than a quorum present.

Under the foregoing circumstances, we do not think ■ those remaining, constituting less than a quorum, were empowered to transact any business. To adopt any other conclusion would be to sanction an endurance contest. We may further add that when the three remaining members sent word to one of the members who had left to return, he was fully justified in refusing to return after the remaining two had departed and when it appeared useless to continue the meeting.

We do not deem it necessary to pass upon the effect of the following provision contained in Florence County Supply Bill or Act: "That upon any matter which the Governing Board of Florence County is required to act in connection with the County's business and affairs a majority of the said Board shall be sufficient." 41 St. at Large, p. 2454, § 3.

We conclude that the meeting of January 2nd did not result in an election.

There remains for determination the question as to whether under the foregoing circumstances respondent Jones continued in office as an officer *de facto*. His term of office is fixed for one year. There is no provision in the statute that he should hold over until his successor is appointed and qualified. Under the recent decisions of this Court, we think it is clear that, upon the expiration of his term, Jones continued in office as an officer *de facto*.

The question is ably discussed and disposed of in the ■■ case of *Heyward v. Long,* 178 S. C., 351; 183 S. E., 145, 151, 114 A. L. R. 1130. The Court had under consideration the status of the Highway Commissioners upon the expiration of the term for which they had been appointed. The Act creating same contained no provision that they would hold over until their successors were appointed and qualified. Notwithstanding the absence of such

provision, the Court held that when the term of a member expired and no appointment of a successor had been made, such member would continue as an officer *de facto*. The Court said: "The general law is that one who holds over after the expiration of his legal term, where no provision is made by law for his holding over, is commonly regarded as a *de facto* officer."

The Court further quoted with approval the following: "It has been held that it is the. general rule of law that an incumbent of an office will hold over after the conclusion of his term until the election and qualification of a successor, even although there is no express provision of the law to that effect."

The recent case of *Smith v. City Council of Charleston,* 198 S. C., 313, 17 S. E. (2d), 860, 863, filed December 2, 1941, is to the same effect. After quoting the above language from *Heyward v. Long supra* the Court said: "This is so although the term of the office is definitely fixed by statute. Of course, upon the office being filled either by appointment or election, as may be provided by the statute for the filling of the office, and the qualification of the appointee or electee, the *de facto* status terminates."

The case of *Gibbes v. Richardson* 107 S. C., 191; 92 S. E., 333, to the extent that it conflicts with the views above expressed, will be regarded as overruled by the more recent pronouncements of the Court above referred to.

It is urged that the act creating the Governing Board and empowering such Board to employ a County Manager indicates a definite legislative intention that the term of County Manager shall end upon the expiration of the stated period of one year, and upon failure to appoint a successor, the incumbent will not hold over as an officer *de facto*. It is true that in the case of the members of the Governing Board, it is provided that their term shall be for four years and "until their successors are nominated, appointed and qualified," while there is no such provision as

to the office of County Manager. We do not think the result contended for would follow. On the contrary, we think it is more logical to assume that the General Assembly did not intend that, upon the expiration of the term and failure to appoint a successor, the office should be entirely vacant, resulting in a serious interruption of the affairs of the County. Had such been the legislative intention, we think it would have been indicated in a definite manner.

Nor do we think the conclusions above announced are altered by reason of the fact that the Board undertook to make an appointment and failed to do so. This circumstance illustrates the soundness of the above conclusion. We think it is conducive to the public interest and the efficient conduct of public affairs that under such circumstances the incumbent should remain as an officer *de facto* until the vacancy is filled.

It follows that, while the office of County Manager is vacant so far as a *de jure* officer is concerned, the incumbent Jones would continue, in the absence of any appointment or election, as *de facto* County Manager.

All exceptions are overruled and judgment affirmed.

Mr. Chief Justice Bonham and Messrs. Associate Justices Fishburne and Stukes concur.

Mr. Associate Justice Baker did not participate.