561 S.E.2d 602

**STATE of South Carolina, Respondent,**

v.

**Tracy McMILLIAN, Petitioner.**

**No. 25430.**

Supreme Court of South Carolina.

Heard Jan. 8, 2002.

Decided March 18, 2002.

Assistant Appellate Defender Tara S. Taggart, of S.C. Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General

Harold M. Coombs, Jr., and Solicitor Warren B. Giese, all of Columbia, for respondent.

PER CURIAM:

We granted a writ of certiorari to review the Court of Appeals' unpublished opinion in *State v. McMillian*, Op. No. 2000–UP–257 (S.C. Ct.App. filed April 5, 2000). We reverse and remand for a new trial.

## FACTS

Petitioner, Tracy McMillian, was indicted for first-degree burglary in regard to the May 25, 1996 burglary of the residence of his cousin, Diane Macon. He was initially tried on January 5–6, 1998. McMillian's first trial resulted in a mistrial, when the jury could not reach a verdict. The jury advised the trial judge it was deadlocked after re-hearing the testimony of the state's only neutral witness, Dorothy Williams Rumph.[1]

On January 13, 1998, McMillian's attorney requested portions of the first trial transcript (including the testimony of Rumph and Morris) from the court reporter. Prior to receipt of the transcript, however, the case was called for trial by the state on Jan. 15–16, 1998. McMillian moved for a continuance to obtain the first trial transcript in order to effectively impeach the witnesses against him. The motion was denied.

Upon re-trial, the state presented the testimony of Rumph, Morris, and Lawanda Bea Murray. The jury convicted McMillian of first-degree burglary, and he was sentenced to 18 years imprisonment. After oral argument at which only two of three Court of Appeals judges were present, McMillian's conviction was affirmed in an unpublished opinion.

---

1. The only other eyewitness for the state at the first trial was Alexander Morris, who drove McMillian to the Eastover/Hopkins residence where the burglary took place. Morris was charged with burglary, but the charges against him were apparently dropped after he gave a statement implicating McMillian. Lawanda Bea Murray, who was allegedly a passenger in Morris' vehicle at the time of the crime, did not testify at the first trial.

### ISSUES

1.  Did the Court of Appeals erroneously proceed with oral argument when one judge could not be present?

2.  Did the Court of Appeals err in affirming the denial of McMillian's motion for a continuance and subsequent motion for a new trial?

### 1.  ORAL ARGUMENT

██ McMillian contends the Court of Appeals erred in holding oral argument with only two of the three panel judges present.  We agree.

McMillian's oral argument was set for 2:45 pm on March 8, 2000.  Upon arrival, counsel was advised that only two of the three panel judges would be present for oral argument and that the third member would listen to the tapes of oral argument.  Arguments proceeded over the objection of counsel for McMillian.  No questions were asked during the argument, and the Court of Appeals affirmed in an unpublished opinion signed by three judges.  McMillian contends this denied him of the quorum required for the Court of Appeals to act.  We agree.

Under S.C.Code Ann. § 14–8–80(d)(Supp 2001), three judges are necessary to constitute a quorum of the Court of Appeals, and a concurrence of the majority is necessary for reversal of the judgment below.  This Court has recognized that no valid act can be done in the absence of a quorum. *Care and Treatment of Matthews,* 345 S.C. 638, 550 S.E.2d 311 (2001); *Gaskin v. Jones,* 198 S.C. 508, 513, 18 S.E.2d 454, 456 (1942).

In *Mills v. Atlantic Coast Line Ry. Co.,* 87 S.C. 158, 69 S.E. 91 (1910), a case involving the quorum requirement as applied to this Court, we stated, "[i]t is obvious that the provision of the Constitution above quoted (which ... must be construed to be mandatory) **absolutely requires that there shall be a hearing by a quorum of the Supreme Court, and this quorum cannot consist of less than three members.**"  Accordingly, we hold a quorum was necessary such that the Court of Appeals should not have continued over the objection

of McMillian's counsel.[2]  In the interest of judicial economy, rather than remand this matter to the Court of Appeals, we will address the merits of McMillian's appeal.

## 2.  DENIAL OF CONTINUANCE/NEW TRIAL

At the outset of the second trial, McMillian moved for a continuance in order to obtain portions of the transcript of his Jan. 5–6 trial, which resulted in a hung jury and a mistrial. McMillian asserted the transcript was necessary in order for him to properly impeach the witnesses against him.  The trial court denied the motion.

A trial judge's denial of a motion for continuance will not be disturbed absent a clear abuse of discretion.  *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760, *cert. denied,* 522 U.S. 853, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997).  Reversals of refusal of a continuance are about as rare as the proverbial hens' teeth.  *State v. Lytchfield,* 230 S.C. 405, 95 S.E.2d 857 (1957).

The only "neutral" witness for the state during McMillian's second trial was Dorothy Williams Rumph.[3]  Accordingly, her credibility was essential to McMillian's defense.  Moreover, at the first trial, the jury deadlocked, 8–4, after re-hearing her testimony.  The crucial nature of Rumph's testimony cannot be overstated.

Rumph was a next-door neighbor of the victim and testified she witnessed the 2:00–2:30 am burglary through the window blind beside her bed.  At both trials, Rumph testified she saw a car driven by Alexander Morris pull up across the street. She saw McMillian get out of the car and go around to the back of the house.  He was gone for about five minutes and

---

**2.**  In *Mills,* the parties had stipulated to have the merits of the appeal decided by the quorum of the Court which was present at a hearing on a motion to dismiss; accordingly, the Court held the parties had consented to Judge Woods participating (notwithstanding his absence at oral argument).  In the present case, however, counsel for McMillian did not consent to oral argument in the presence of only two judges.

**3.**  Although Alexander Morris and Bea Murray both inculpated McMillian in the second trial, both Morris and Murray could feasibly have been prosecuted by the state since they admitted driving him to the location where the burglary occurred.  In fact, Morris was initially indicted for the crime.

returned and put something in the back seat of the car. The two men drove off in the car, but returned a little while later. McMillian went back toward Macon's back door, and returned with a stereo component set. Rumph was certain of her identification because she had known McMillian since 1976, and he had been to her house earlier that evening, wearing a white tank top and camouflage pants, the same attire he wore at the time of the burglary. Rumph testified the area was "lit up pretty good." Rumph knew Morris because he used to stay with her cousin. She also recognized his grey and black car. Notwithstanding both Morris and Murray testified that Murray was present in the back seat of the car, Rumph testified she did not see a third person.

During the second trial, Rumph testified that she was no longer neighbors with the victim. However, at the first trial two weeks earlier, Rumph testified that she still lived at the address across from the victim. McMillian contends he "was prevented from showing that if a given witness lied in the past or was now lying about a minor point, then he/she could very well be lying about a major point." We agree. Although the fact that Rumph no longer lived at the Lewis Scott address is not in any way relevant to McMillian's guilt, the fact that she lied about her address at the first trial is relevant to her overall credibility. Given that Morris was potentially culpable in the crime, and that there was no other direct evidence linking McMillian to the burglary,[4] we find his testimony inherently suspect.[5] Murray was also feasibly subject to

---

4. The stolen goods were never recovered, and no fingerprint or other evidence was located at the scene. McMillian presented a witness who testified he was at home sleeping at the time of the crime as she let him in around midnight. He also presented testimony of his aunt, Alice Scott, who testified she had, on one occasion in May 1996, seen a bald-headed man in the car with Morris and mistaken him for McMillian (who is balding).

5. Further, Morris testified at the first trial that the car in which he drove McMillian was a 1986 or 1987 blue Chevrolet, and that McMillian came out of the apartment with a television and stereo. At the second trial, Morris testified that he was driving a silver 1985 Sierra at the time of the incident. Although defense counsel asked Morris if he recalled his prior testimony that he was driving a blue car at the time of the incident, counsel did not have a transcript of the first trial, such that he was unable to impeach Morris with specifics concerning his prior testimony.

prosecution for her participation in the crime, her testimony is likewise dubious. The lack of credibility of these witnesses simply highlights the significance of Dorothy Rumph's testimony, and the critical need of the defense to be able to properly impeach her.[6] On the present record, we simply cannot escape the conclusion that the verdict hinged upon her credibility, and that McMillian was hindered in his ability to impeach her.

We do not find recent cases of this Court and the Court of Appeals controlling under the circumstances of this case.

In *State v. Asbury*, 328 S.C. 187, 493 S.E.2d 349 (1997), the defendant requested a continuance when his case which originally ended in a mistrial was called for retrial and the transcript was not yet available. Asbury argued the transcript was necessary for the effective impeachment of witnesses. The trial court denied the motion, concluding the transcript would have been beneficial, but was not essential. This Court affirmed the trial court's ruling, finding Asbury failed to establish prejudice from the lack of access to the transcript from the first trial, noting that the court reporter's back-up tapes were available and could have been used for impeachment purposes as needed. *See also State v. Owenby*, 267 S.C. 666, 668, 230 S.E.2d 898 (1976)("it is preferable to have available the written transcript taken at the former hearing, but the unavailability of such a transcript does not preclude utilization of other means of proving to the court what the witness stated on a prior occasion"). *Asbury* is distinguishable. Unlike *Asbury*, there is no court reporter's tape available as the transcript was done solely on a stenographic machine without a backup tape.[7]

---

6. The defense also hoped to impeach Rumph with inconsistencies concerning the lighting in the area at the time of the crime, and the time at which McMillian allegedly visited her residence on the evening of the crime.

7. Moreover, in *Asbury* there was abundant evidence of the defendant's guilt. The defendant's fingerprints were found at the victim's residence, there was testimony that electrical cords which bound the victim's hands and ankles had been cut by a pair of scissors found in defendant's home, and there was evidence that some severed electrical cords had at one time been attached to an electric blanket found in the

Similarly, in *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000), the Court of Appeals rejected the defendant's claim that he should have been granted a continuance in order to obtain the transcript of his first trial. ·The Court of Appeals held Mansfield did not need a continuance as he could have served the court reporter with a subpoena to appear in court and a subpoena duces tecum to bring the tapes with her, and accomplished his impeachment in that manner. 538 S.E.2d at 262. Again, in the present case, there were no tapes available to subpoena. Accordingly, we find *Mansfield* inapplicable.

Under the limited circumstances of this case, we find the trial court abused its discretion in denying McMillian's motion for a continuance. Given the limited amount of time between the first and second trial, the critical nature of Rumph's testimony, and the fact that no tapes or transcripts were available at the time of the second trial, we find that McMillian should have been granted a continuance in order to obtain portions of the transcript, and the lack of such a transcript prejudiced his ability to effectively cross-examine the witnesses against him. Accordingly, the Court of Appeals' opinion in reversed and the case is remanded for a new trial.

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE and WALLER, JJ., concur.

PLEICONES, J., concurs in part and dissents in part in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES, concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. I agree with the majority that a party is entitled to insist that a quorum of the Court of Appeals be present at her oral argument. I disagree, however, that petitioner is entitled to a new trial because his motion for a continuance was denied. In my view, it matters not that the court reporter in petitioner's first trial used a stenographic machine rather than a steno-

---

defendant's home. As noted previously, there was no such evidence in the present case.

mask machine with a back-up tape: in either case, the presence of the court reporter and her record may be had through the use of a subpoena and a subpoena duces tecum. *State v. Asbury,* 328 S.C. 187, 493 S.E.2d 349 (1997); *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000).

While the better practice in these situations is to grant the continuance so that a copy of the pertinent part of the transcript may be obtained, I would not find an abuse of discretion warranting a new trial here. *State v. Asbury, supra.*