# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Anderson County, Petitioner-Respondent,

v.

Joey Preston and the South Carolina Retirement System, Defendants,

Of whom Joey Preston is the Respondent-Petitioner and the South Carolina Retirement System is the Respondent.

Appellate Case No. 2017-001898

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Anderson County
Roger L. Couch, Circuit Court Judge

---

Opinion No. 27912
Heard February 20, 2019 – Filed August 7, 2019

---

## VACATED AND REMANDED

---

James Theodore Gentry and Wade S. Kolb, III, both of Greenville, and Alice W. Parham Casey, of Columbia, all of Wyche Law Firm, for Petitioner-Respondent.

Candy M. Kern-Fuller, of Upstate Law Group, LLC, of Easley, and Lane W. Davis, of Nelson Mullins Riley & Scarborough, LLP, of Greenville, both for Respondent-Petitioner.

Justin R. Werner, of Columbia, for Respondent.

**CHIEF JUSTICE BEATTY:** In November 2008, the Anderson County Council (2008 Council) approved a $1.1 million Severance Agreement for county administrator Joey Preston (Preston). In January 2009, a new county council (2009 Council) was sworn in, and filed the present action in November 2009 seeking to invalidate the Severance Agreement. The circuit court ruled that, despite tainted votes, the Severance Agreement was valid and also held: (1) public policy rendered neither the Severance Agreement nor the vote adopting it void; (2) Preston did not breach a fiduciary duty because he owed no duty to disclose Council members' personal conflicts of interest; (3) the County failed to prove its claims for fraud, constructive fraud, and negligent misrepresentation; (4) the 2008 Council's approval of the Severance Agreement was neither unreasonable or capricious nor a product of fraud and abuse of power; (5) the County's constructive trust claim no longer remained viable; (6) rescission was unavailable as a remedy; (7) the County had unclean hands; (8) adequate remedies at law barred the County from invoking the court's equitable jurisdiction; (9) the County breached the covenant not to sue in the Severance Agreement by bringing this lawsuit; and (10) the issue concerning the award of attorney's fees should be held in abeyance pending the final disposition and filing of a petition.

A panel of the Court of Appeals, which included then Chief Judge Few, heard oral argument in this case in June 2015. In February 2016, Chief Judge Few was elected as a Justice of this Court. Thereafter, on August 16, 2017, the Court of Appeals affirmed in part and reversed in part with a notation indicating Associate Justice Few as "not participating."

This Court granted the parties' cross-petitions for writs of certiorari to review the Court of Appeals' published decision, wherein the Court of Appeals held:

We affirm the circuit court's finding that Preston owed no fiduciary duty to inform the 2008 Council of improper votes and his conduct did not constitute fraud, constructive fraud, or negligent misrepresentation. The circuit court also properly declined the County's invitation to apply the single tainted vote rule . . . . We hold the court erred, however, in refusing to invalidate the 2008 Council's approval of the Severance Agreement based upon the absence of a quorum, and accordingly, we reverse. Although we agree with the circuit court that rescission is not

an available remedy because the parties cannot be returned to their status quo ante, we reverse the court's finding of unclean hands. We further reverse the court's finding that the County could not invoke its equitable powers because an adequate remedy at law existed. Lastly, we reverse the court's holding that the County breached the terms of the Severance Agreement by bringing the instant action.

*Anderson Cty. v. Preston*, 420 S.C. 546, 583, 804 S.E.2d 282, 301 (Ct. App. 2017).

For the reasons explained below, we now vacate the decision of the Court of Appeals; find the Severance Agreement invalid due to the County's lack of a quorum; and remand to the circuit court to determine the exact amount that Preston must refund the County.

## I.     Factual and Procedural History[1]

Prior to the approval of the Severance Agreement, the political environment in Anderson County involved lawsuits between sitting council members and Preston, both personally and as the County Administrator.

The 2008 Council consisted of Chairman Michael Thompson (Thompson) and Council members Larry Greer (Greer), Ron Wilson, Gracie Floyd (Floyd), Robert Waldrep (Waldrep), Cindy Wilson, and Bill McAbee (McAbee).

In June 2008, primary challengers ousted three incumbent members of the 2008 Council: Tommy Dunn defeated Thompson, Tom Allen defeated McAbee, and Eddie Moore defeated Greer. Some of the primary victors, as well as Waldrep and Cindy Wilson, ran on platforms calling for examination into and possible reform of the financial and governance practices of the Preston administration.

From June to December 2008, Waldrep and Cindy Wilson held a series of meetings with Moore, Dunn, and Allen at Waldrep's office. During these meetings, the participants laid out an agenda for the 2009 Council that included firing the law firm for the County and hiring a new one; hiring a financial investigator or auditor; designating Moore as chairman; drafting resolutions for the first meeting; implementing a hiring freeze; and addressing the position of county administrator and various other personnel matters.

---

[1] Unless otherwise noted, the facts are taken from the Court of Appeals' opinion.

After the primary elections, Preston retained Robert Hoskins (Preston's Attorney) as his counsel. On September 25, 2008, Preston's Attorney notified the 2008 Council of Preston's anticipatory breach of contract claim, stating the following:

[I]t has come to Mr. Preston's attention that certain existing Council members have made statements that they and certain newly elected Council Members intend, after January 2009, to prevent him from carrying out his duties as County Administrator . . . . Preston considers the intent of certain members of Council and their allies to prevent him from performing his job as an anticipatory breach of his employment contract . . . . [T]he political and personal agenda of the obstructionists has rendered his ability to serve the people of Anderson County beyond January 1, 2009 impossible.

In response, the 2008 Council referred Preston's claim to its personnel committee—chaired by Ron Wilson—and hired Tom Bright, an employment attorney, to advise the County on the matter. Bright then interviewed all seven members of the 2008 Council, as well as the county attorney, to receive their input.

On October 23, 2008, Preston's attorney delivered a letter to Bright, in which he alluded to a number of causes of action and tort claims Preston planned to assert against current and incoming Council members. In the letter, however, he offered to settle Preston's anticipatory breach claim and "all claims against the County and the two individual Council [m]embers [he] previously mentioned." Under this proposed settlement, Preston would resign and execute a complete release of all claims against the County, Waldrep, and Cindy Wilson in exchange for the County paying $1,276,081 in damages: $827,222 for the total amount of pay and benefits due under his employment agreement (the Employment Agreement); $356,087 to the South Carolina Retirement System (SCRS) to purchase seven years, seven months, and twenty-three days of service credits to allow him to retire immediately with a full pension; and $92,772 to his health reimbursement account for retiree health benefits.

After receiving the letter, Bright met with the personnel committee to discuss how the County should address the matter. In his notes outlining Preston's claims and the County's options, Bright stated Preston had no anticipatory breach or constructive discharge claim. Bright also advised the committee that, under this Court's ruling in *Piedmont Public Service District v. Cowart* (*Cowart II*), 324 S.C. 239, 478 S.E.2d 836 (1996), the County had a good argument that Preston's Employment Agreement was voidable—and therefore had no value—because it

purported to extend his employment beyond the term of the Council that approved it. Nevertheless, Bright also told the committee if the County were to lose, then it could face up to $2 million in litigation costs going forward. Thus, Bright advised the 2008 Council it could (1) do nothing, (2) leave the issue for the 2009 Council to decide, (3) terminate Preston and pay him nothing, or (4) settle with Preston and pay out his contract. As to the fourth option, Bright cautioned that citizens may go after former Council members for giving away their money if the 2008 Council chose to settle. After considering the options, the personnel committee directed Bright "to go and talk to Preston's Attorney and try and get the best deal you can."

Following several weeks of negotiations, Bright emailed Preston's Attorney a copy of a proposed Severance Agreement and release of all claims on November 18, 2008. That evening, the 2008 Council voted to amend the agenda to consider the Severance Agreement, voted for its approval, voted to approve budget transfers to fund it, and then voted to reapprove it on reconsideration. The 2008 Council approved the Severance Agreement, and the budget transfers to fund it, by a 5–2 vote. After the votes, the 2008 Council voted to hire Michael Cunningham as the new county administrator and adjourned without conducting any further business.

Pursuant to the terms of the Severance Agreement, Preston agreed to resign as county administrator on November 30, 2008, and release all claims against the County and any of its Council members regarding his employment. In exchange, Preston received $1,139,833—less state and federal withholdings—from the County. The County also agreed to contribute $359,258 to the SCRS "to pay for retirement service credits," paid Preston $780,575 "in the form of a severance benefit," and gave Preston title to the 2006 GMC Yukon he was using as a County vehicle.

The newly constituted 2009 Council held its first meeting on January 6, 2009, during which it voted to hire a new law firm and a financial investigator to review Cunningham's employment contract, investigate the manner in which he was hired, and review the actions taken by the 2008 Council on November 18, 2008.[2]

---

[2] In *Bradshaw v. Anderson County*, this Court held South Carolina Code section 4-9-660 (1986) of the Home Rule Act expressly authorized the 2009 Council—operating under a council–administrator form of government—to directly engage professionals "for the purpose of inquiries and investigations." 388 S.C. 257, 263, 695 S.E.2d 842, 845 (2010). The Court found the 2009 Council had the authority to investigate the 2008 Council's business and financial practices, "especially concerning contracts related to the former and current County Administrators." *Id.*

Thereafter, the County sued Preston and named SCRS as a defendant, alleging causes of action for (1) violation of the State Ethics Act,[3] section 2-37(g) of the Anderson County Code of Ordinances (the County Code), and the common law; (2) violation of public policy; (3) breach of fiduciary duty; (4) fraud; (5) constructive fraud; (6) negligent misrepresentation; (7) capriciousness, unreasonableness, and fraud; (8) fundamental and substantial breach of the Severance Agreement; (9) breach of fiduciary duties relating to back-dated documents; (10) constructive trust; and (11) unjust enrichment. SCRS filed an answer and cross-claim against Preston in response to the County's complaint. The County later amended its complaint to include additional factual allegations. Preston filed answers to the County's complaint and amended complaint, asserting counterclaims against the County and SCRS. The County then filed replies to Preston's counterclaims and amended counterclaims.

The matter was tried without a jury from October 29, 2012, to November 5, 2012. In its May 3, 2013 order (the Final Order), the court granted judgment in favor of Preston on all causes of action as well as his counterclaim against the County.

In the Final Order, the circuit court disqualified four 2008 Council members for improperly participating in the votes approving the Severance Agreement. The court found Thompson voted in violation of section 2-37(g)(4)(e) of the County Code because he was seeking future employment from the County through Preston at the time of the vote. The court likewise found Ron Wilson's vote violated subsections 2-37(g)(4)(a) and (e) because Ron Wilson's daughter had recently received a substantial financial benefit from Preston after he extended her personal services contract with the County. Although Waldrep and Cindy Wilson voted against the Severance Agreement, the court found their votes violated section 2-37(g) because both had a "financial interest greater than that of the general Anderson County public," and their participation created "a substantial appearance of impropriety." Given that "Preston agreed not to pursue any further claims against any County Council member," the court found Waldrep and Cindy Wilson "had a

---

at 258, 695 S.E.2d at 842. According to the Court, it would be absurd to require the county administrator, "who is answerable to the council and not the electorate, to investigate himself." *Id*. at 263, 695 S.E.2d at 845.

[3] S.C. Code Ann. § 8-13-700 (2009). We cite to the code section in effect at the time of the alleged misconduct, the amendment of which is irrelevant to the outcome of this case.

direct economic interest"—regardless of the vote's outcome—and should not have participated while Preston maintained a lawsuit against them individually.

After disqualifying four of the seven members,[4] the court—relying upon *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999), and section 2-37(g)(3) of the County Code—nevertheless found "a majority of those present and properly voting approved Preston's Severance Agreement." The court also held: (1) public policy neither rendered the Severance Agreement nor the vote adopting it void; (2) Preston did not breach a fiduciary duty because he owed no duty to disclose Council members' personal conflicts of interest; (3) the County failed to prove its claims for fraud, constructive fraud, and negligent misrepresentation; (4) the 2008 Council's approval of the Severance Agreement was neither unreasonable or capricious nor a product of fraud and abuse of power; (5) the County's constructive trust claim no longer remained viable; (6) rescission was unavailable as a remedy; (7) the County had unclean hands; (8) adequate remedies at law barred the County from invoking the court's equitable jurisdiction; (9) the County breached the covenant not to sue in the Severance Agreement by bringing this lawsuit; and (10) the issue concerning the award of attorney's fees should be held in abeyance pending the final disposition and filing of a petition.

In light of the circuit court's Final Order, the County filed a motion to alter or amend the judgment as well as a post-trial motion to amend its complaint. The circuit court denied both post-trial motions in an order (the Post-Trial Order) dated November 8, 2013. The Court of Appeals affirmed in part and reversed in part. This Court granted the parties' cross-petitions for writs of certiorari.

## II. Discussion

### A. Quorum – Court of Appeals

Preston argues this Court should vacate the decision rendered by the Court of Appeals because the panel lacked a quorum of three judges and, instead, issued an opinion authored by only two judges.

In response, the County maintains that section 14-8-80(d) of the South Carolina Code (2017) allows the vote of only two judges to issue an effective

---

[4] Neither party appealed the circuit court's disqualification of the four votes, thus it is the law of the case. *Biales v. Young*, 315 S.C. 166, 168, 432 S.E.2d 482, 484 (1993) (stating, "[f]ailure to argue is an abandonment of the issue and precludes consideration on appeal").

opinion. According to the County, *State v. McMillian*[5] simply requires that three judges be present during oral argument, which occurred here.

"On a panel [of the Court of Appeals], three judges shall constitute a quorum, and the concurrence of a majority is necessary for the reversal of the judgment below." S.C. Code Ann. § 14-8-80(d) (2017).

In *McMillian*, only two of three Court of Appeals judges were present at oral argument. *State v. McMillian*, 349 S.C. 17, 19, 561 S.E.2d 602, 603 (2002). However, "[a]rguments proceeded over the objection of counsel for McMillian . . . and the Court of Appeals affirmed in an unpublished opinion signed by three judges." *Id.* at 20, 561 S.E.2d at 603.

On appeal, this Court held "three judges are necessary to constitute a quorum of the Court of Appeals, and a concurrence of the majority is necessary for reversal of the judgment below." *Id.* The Court added, "[t]his Court has recognized that no valid act can be done in the absence of a quorum." *Id.* at 20, 561 S.E.2d at 603–04; *Gaskin v. Jones*, 198 S.C. 508, 513, 18 S.E.2d 454, 456 (1942) (holding that the Governing Board of Florence County did not have power to transact business when members of the Board left the room during the meeting). However, despite finding the Court of Appeals erred in hearing the case without a quorum, the *McMillian* Court, citing judicial economy, addressed the merits of McMillian's appeal. *McMillian*, 349 S.C. at 21, 561 S.E.2d at 604.

We find section 14-8-80(d), read in conjunction with *McMillian*, provides that, in the absence of a quorum, the Court of Appeals cannot issue a valid opinion. *See McMillian,* 349 S.C. at 17, 561 S.E.2d at 602 (finding a quorum constitutes three judges, and no valid act can be done in the absence of a quorum).

We take this opportunity to clarify that a quorum is required throughout the proceedings, including the issuance of the opinion.[6] Thus, because the panel did not have the quorum needed to reverse the circuit court, the Court of Appeals did not have the authority to reverse the judgment below. As a result, we vacate the opinion of the Court of Appeals. However, due to the unsettled law of *McMillian* at the time of oral argument, and in the interest of judicial economy, we proceed to the merits of the dispute.

---

[5] 349 S.C. 17, 561 S.E.2d 602 (2002).

[6] This ruling shall apply prospectively.

## B. Severance Agreement

The County challenges the validity of the Severance Agreement on the ground there was an absence of a quorum when Council voted.

### 1. Issue Preservation

Preston argues the Court of Appeals erred in concluding the County could raise the County quorum issue in its post-judgment motion under Rule 59(e), SCRCP. According to Preston, the County failed to preserve its quorum theory of relief by neglecting to raise the issue before, during, or at any time during the six months between the circuit court's conclusion and issuance of the final judgment.

In support of this contention, Preston maintains that the parties argued the validity of Cindy Wilson's and Waldrep's votes on numerous occasions during trial. Preston claimed at trial and now claims in his brief that his affirmative defense "Some or all of the claims asserted in the County's Complaint . . . are barred by the holding of *Baird [] v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999)[,]" encompasses the fact that the votes of Cindy Wilson and Waldrep were challenged in conjunction with the votes of McAbee, Michael Thompson, and Ron Wilson and, as a result, the parties presented arguments that would have invalidated four votes. Therefore, according to Preston, the County should have raised the quorum issue prior to, or during, trial.

In response, the County maintains that the quorum issue did not exist until the circuit court issued its order invalidating four votes. According to the County, the Rule 59(e) motion was the appropriate method to address the circuit court's grant of relief not sought in the pleadings, based on an issue that was never raised at trial.

We note neither party sought relief specifically based on the absence or existence of a quorum. Furthermore, the trial record is absent of either party mentioning the lack of a quorum, advancing an argument for or against a quorum, or presenting arguments explaining how any disqualification might affect a quorum. Thus, the question of whether a quorum existed first arose when the circuit court invalidated the votes of four Council members due to conflicts of interest in the Final Order.

Consequently, the County's Rule 59(e) motion was the proper means by which to raise the argument that the Severance Agreement should be invalidated because the 2008 Council passed it in the absence of a quorum. *See Fryer v. S.C. Law Enf't Div.*, 369 S.C. 395, 399, 631 S.E.2d 918, 920 (Ct. App. 2006) (stating, "[a] post-trial

motion must be made when the [circuit] court either grants relief not requested or rules on an issue not raised at trial"). Because the circuit court, in denying the County's motion to reconsider, addressed the merits of the County's quorum argument in the alternative, the County's argument was properly raised to and ruled upon by the circuit court and, thus, preserved for review on appeal.

### 2. Absence of a Quorum

The County argues that, as a result of the circuit court's disqualification of four members, the 2008 Council was powerless to act with only three members to vote.

In contrast, Preston contends that for purposes of calculating a quorum, the County Code does not take into account a council-member's voting capacity but, instead, is only concerned with the Council members' "physical presence at the meeting site."

Section 2-37(g)(3) of the County Code provides, "Except where otherwise specified in these rules, a majority vote of those members present and voting shall decide all questions, motions, and other votes." Additionally, section 2-37(d) defines a quorum as follows:

> A quorum shall consist of a majority of the council. In the absence of a quorum, the meeting cannot be convened. Should sufficient members leave during a meeting, the chairperson shall immediately declare a recess and attempt to obtain a quorum. If, after a reasonable time, a quorum has not been obtained, the meeting shall be adjourned. Members of county council may excuse themselves briefly during a meeting without loss of a quorum; however, no vote may be taken during the temporary absence of quorum.

In the instant case, the circuit court invalidated four of the Council member's votes. After removing the improper votes, the circuit court held that a majority of the members present and voting passed Preston's Severance Agreement.[7]

---

[7] The vote approving the Severance Agreement passed 5–1–1, with Thompson and Ron Wilson voting Aye; Cindy Wilson voting Nay; Waldrep Abstaining (adjusted vote, passed 3–0–1). The motion to transfer funds passed 5–2, with Thompson and Ron Wilson voting Aye; Waldrep and Cindy Wilson voting Nay (removing improper votes, passed 3–0).

Section 2-37(d) requires that "a quorum consist of a majority of the Council" and in the absence of such no quorum exists.  Additionally, this Court determined in *Garris* that a member disqualified due to a conflict of interest may not be counted for purposes of a quorum.  *See Garris v. Governing Bd. of S.C. Reinsurance Facility*, 333 S.C. 432, 453, 511 S.E.2d 48, 59 (1998) (stating, "[a] member who recuses himself or is disqualified to participate in a matter due to a conflict of interest, bias, or other good cause may not be counted for purposes of a quorum at the meeting where the board acts upon the matter").

Here, a majority of the seven-member Council requires four members to constitute a quorum.  After removing the disqualified votes, however, only three of the Council members could count towards the quorum.  *Id.*  As such, a quorum did not exist.  Accordingly, the circuit court erred in considering the four disqualified votes in its quorum calculation.  Therefore, because the Council acted without the quorum necessary for taking valid action, the Severance Agreement is null and void.

## C. Remedy

The County argues the excess payments Preston received, and will receive, from January 1, 2009, until he turns sixty years' old (approximately $1,333,000) could be redirected from Preston to the County as part of a remedy.  Furthermore, according to the County, the purchase of service credit on Preston's behalf means that Preston will receive benefit amounts after age sixty that will exceed what he would have received without such a purchase, totaling $833,000 of additional benefits (with a present value at the time of trial of $180,000).  Therefore, the County asserts a claim for unjust enrichment.

SCRS contends that any request for relief against a retired member of the SCRS must be consistent with the anti-alienation provisions of section 9-1-1680 of the South Carolina Code (2009), which provides that retirement benefits are generally exempt from legal process, but may be subject to the doctrine of constructive trust.[8]

"A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another. Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly

---

[8] SCRS takes no position on the underlying merits of the dispute.

enriched at the expense of the plaintiff." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009).

"[S]ubject to the doctrine of constructive trust ex maleficio . . . the right of a person to an annuity or a retirement allowance or to the return of contributions . . . are exempted from levy and sale, garnishment, attachment, or any other process . . . ." S.C. Code Ann. § 9-1-1680 (2009).

Because we hold that the Severance Agreement is void, it is clear Preston realized a benefit that would be inequitable for him to retain in the absence of the agreement. Thus, we must address the appropriate remedy.

Initially, we emphasize that Preston and the County both played a part in creating the toxic environment of the County Council and the contentious litigation that ensued. Members of the 2008 Council used FOIA requests and the media to create a toxic atmosphere while Preston doled out benefits to key members prior to the vote on the Severance Agreement.

Additionally, we are cognizant of the fact that Preston cannot be returned to his position of County Administrator. Furthermore, Preston concedes that he can no longer revive his prior legal claims against the County nor claims against certain Council members from the 2008 Council because they are time-barred and the evidence (text messages and emails) he could have unearthed no longer exist.

The value of the severance package was $1,139,833.00 (less withholdings). After consideration of all the variables, we hold that the $355,848.95 payment to SCRS is not recoverable.[9] Further, we find the County shall not be entitled to a refund or reimbursement from SCRS for the difference.[10] However, the County shall

---

[9] A SCRS program director provided in an affidavit that, at the time of the affidavit, the County had paid a total of $355,848.95 to SCRS to purchase 7 years, 7 months, and 23 days of additional service credit for Preston. As of the date of the affidavit (September 11, 2012), SCRS had paid Preston accumulated monthly benefits totaling $329,561.24. According to the director, by December 2012, SCRS would have paid $360,313.52 in retirement benefits to Preston since January 2009.

[10] SCRS no longer has any liability as a stakeholder to return funds to the County, because the full amount of the County's service purchase payment made to SCRS on Preston's behalf has now been exhausted through the payment of retirement benefits to Preston. Thus, the County is not entitled to any lump-sum distribution of the present value of Preston's benefits or any other special distribution from SCRS.

recover the total amount the County paid in cash to Preston pursuant to the Severance Agreement, plus the value of the 2006 County vehicle.  Therefore, we remand to the circuit court to determine the amount the County is entitled to recover from Preston in the form of a civil judgment.

### III.    Conclusion

For the reasons explained above, we vacate the decision of the Court of Appeals; find the Severance Agreement invalid due to the County's lack of a quorum; and remand to the circuit court to determine the exact amount that Preston must refund the County.[11]

**VACATED AND REMANDED.**


**KITTREDGE, HEARN and JAMES, JJ., and Acting Justice Stephanie McDonald, concur.**

---

[11] Because our decision is dispositive, we decline to address the remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).