# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Terry Edward McCall, Appellant.

Appellate Case No. 2015-001097

---

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

---

Opinion No. 27943
Heard May 30, 2019 – Filed February 5, 2020

---

### AFFIRMED

---

Appellate Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General William M. Blitch, Jr., both of Columbia, and Solicitor William Walter Wilkins, III, of Greenville, for Respondent.

---

**JUSTICE HEARN:** In this appeal from a felony DUI conviction, Appellant Terry McCall contends the warrantless collection of his blood and urine at the direction of law enforcement pursuant to Section 56-5-2946 of the South Carolina Code (2018) violates the Fourth Amendment. We affirm because exigent circumstances existed to support the admission of his blood and urine test results.

## FACTUAL BACKGROUND

On the evening of March 4, 2012, in Greenville, McCall's Ford Explorer crossed a center turn lane and veered into oncoming traffic. He struck Robert Suddeth's Chevrolet pickup truck head on as Suddeth and his daughter were returning home from her volleyball practice. The collision left McCall and Suddeth injured, and both had to be extricated from their vehicles by the "jaws of life." Suddeth's daughter suffered only minor physical injuries, but Suddeth's injuries were life-threatening. Fortunately, a firefighter was driving nearby, and after narrowly avoiding the crash, he stopped to help. To reach Suddeth, he climbed into the bed of the pickup truck and entered the cab through the back window where he immediately realized that Suddeth was near death. Law enforcement, emergency personnel, and even the coroner arrived shortly thereafter, as it was uncertain whether Suddeth would survive.

Trooper David McAlhany and Sergeant Wes Hiatt of the South Carolina Highway Patrol were two of the many law enforcement personnel at the scene. Hiatt quickly noticed empty beer cans inside the Ford Explorer. Believing that alcohol may have played a role in the collision, Hiatt questioned McCall while he was strapped onto a stretcher in the back of an ambulance. McCall denied drinking any alcohol and said his brakes had failed. Although McCall's breath did not smell of alcohol, Hiatt believed he was impaired because McCall's eyes were "glassy and his pupils were dilated." Hiatt also informed McAlhany of his suspicion that McCall was under the influence of a substance other than alcohol.

In addition to McAlhany and Hiatt, approximately eight other officers assisted at the scene, most of them primarily responsible for traffic control on this heavily traveled road during evening rush hour. The Major Accident Investigation Team also arrived and began investigating the accident.

The ambulance arrived at the hospital approximately thirty minutes after emergency officials first reached the accident. However, McAlhany—the primary investigator—remained at the scene, interviewing several witnesses as part of his investigation. Approximately two hours after the crash, McAlhany drove to the hospital to interview McCall and found him lying on a stretcher in the hallway of the critical care unit. McCall again contended his brakes failed because there were no calipers on the wheels to hold the brake pads in place, essentially meaning the truck lacked functional brakes. According to McAlhany, McCall seemed to be impaired, as he appeared "sleepy" and would "open his eyes real wide" when answering questions. McAlhany arrested McCall for felony DUI resulting in great bodily injury at 8:13 p.m.—two hours and twenty-three minutes after the crash.

McAlhany informed McCall of his implied consent rights, reading him a form that stated in part:

- You are under arrest for Felony Driving Under the Influence (Felony DUI), Section 56-5-2945, South Carolina Code of Laws 1976, as amended, or a law enforcement officer has probable cause to believe that you have violated this section.
- The officer has directed that samples be taken for alcohol and/or drug testing.
- The samples will be taken and tested according to Section 56-5-2950 and SLED policies.
- Pursuant to Section 56-5-2946, you must submit to either one or a combination of chemical tests for the purpose of determining the presence of alcohol, drugs, or a combination of alcohol and drugs.
- The resistance, obstruction, or opposition to testing pursuant to Section 56-5-2946 is evidence admissible at trial.

According to McAlhany, McCall agreed to a blood and urine test and signed the implied consent form while lying on the stretcher. Further, the nurse administering the tests noted that she would never collect a person's blood if he resisted, and that McCall at no point objected to the tests. However, McCall disputes that he signed the form. Ultimately, the nurse collected McCall's urine sample at 8:45 p.m. and retrieved a blood sample at 9:05 p.m.—three hours and fifteen minutes after the accident. The blood sample tested positive for methamphetamine and benzodiazepines, including Lorazepam and Klonopin, and the urine sample confirmed these results.

Before trial, McCall moved to suppress the blood and urine test results, arguing that law enforcement violated his Fourth Amendment rights by directing blood and urine tests without a warrant. McCall asserted section 56-5-2946 is unconstitutional because it establishes a per se exception to the warrant requirement. Conversely, the State contended the section satisfies the consent exception to the warrant requirement. Alternatively, the State argued that even if section 56-5-2946 is unconstitutional, McCall expressly consented to the tests, and furthermore, exigent circumstances justified the warrantless search. The trial court denied the motion to suppress, finding exigent circumstances existed and that section 56-5-2946 by itself established consent.

Thereafter, on the morning of the second day of trial, McCall informed the trial court that he had a "conflict" with his attorney, and as a result, it would be best

if the court relieved counsel. McCall further sought a continuance to allow him time to hire another lawyer, which the court denied. The court also asked McCall whether he understood the dangers and risks of proceeding pro se, to which he responded affirmatively. After finding that McCall's motions were a dilatory tactic for the purpose of delay, the court relieved his attorney, appointed standby counsel, and required McCall to proceed pro se. At the conclusion of the three-day trial, the jury found McCall guilty, and the court sentenced him to fifteen years' imprisonment. McCall appealed to the court of appeals, and this case was transferred pursuant to Rule 203(d)(1)(A)(ii) and 204(a), SCACR.

## ISSUE

Did the warrantless blood and urine tests pursuant to Section 56-5-2946 of the South Carolina Code (2018) violate McCall's Fourth Amendment right to be free from unreasonable searches?[1]

## DISCUSSION

We begin with the core protections afforded by the Fourth Amendment—that individuals be free from unreasonable searches and seizures by their government. U.S. Const. amend. IV. It is well-settled that drawing blood from an individual is a search within the purview of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966) (noting that blood tests "plainly constitute searches of 'persons'"). A warrantless search is per se unreasonable unless a recognized exception applies, which the State has the burden to prove. *State v. Gamble,* 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013); *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 327 (2011). Stated differently, a search without a warrant

---

[1] McCall also asserts the trial court denied McCall's Sixth Amendment right to counsel after relieving his attorney during the trial and refusing to grant him a continuance. We affirm this issue pursuant to Rule 220(b), SCACR, and the following authorities: *State v. Morris*, 376 S.C. 189, 208, 656 S.E.2d 359, 369 (2008) (noting that an appellate court will not reverse the denial of a continuance absent an abuse of discretion); *State v. McMillian*, 349 S.C. 17, 21, 561 S.E.2d 602, 604 (2002) ("Reversals of refusal of a continuance are about as rare as the proverbial hens' teeth.") (citing *State v. Lytchfield,* 230 S.C. 405, 95 S.E.2d 857 (1957)); *Wroten v. State*, 301 S.C. 293, 294–95, 391 S.E.2d 575, 576 (1990) (holding that an appellate court looks to the record as a whole to determine whether the defendant was sufficiently apprised of the dangers of proceeding pro se).

is reasonable "only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014).

In the last decade, the United States Supreme Court has issued three opinions concerning the constitutionality of warrantless testing following a suspected DUI. *Missouri v. McNeely*, 569 U.S. 141, 156 (2013) (holding whether the warrantless blood testing of a suspected drunk driver qualifies as an exigent circumstance involves a "case-by-case analysis under the totality of the circumstances"); *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160 (2016) (holding a warrantless breath test, but not a blood test, is valid as a lawful search incident to arrest); *Mitchell v. Wisconsin*, 588 U.S. ___, 139 S. Ct. 2525, 2530–32 (2019) (adopting a general rule that law enforcement may obtain a blood test without a warrant from an unconscious motorist under the exigent circumstances exception). Each case focused on a different exception to the warrant requirement, including the exigent circumstances exception invoked today.

This well-recognized exception to the warrant requirement may be invoked "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 569 U.S. at 148–49 (citing *Kentucky v. King,* 563 U.S. 452, 460 (2011)). Generally, whether exigency exists is also determined by the totality of the circumstances. *Id.* While the exception may apply in numerous settings, *see id.* at 148–49, in the context of a suspected impaired driver, the rationale derives in part from the destruction of evidence—that evidence of impaired driving would dissipate in the bloodstream during the time needed to procure a warrant. Two Supreme Court cases guide our exigency discussion: *Schmerber* and *McNeely*.

In *Schmerber*, the Supreme Court held the specific facts therein permitted the warrantless blood draw over the defendant's objection because the police officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,'" *Schmerber*, 384 U.S. at 770. Those "specific facts" involved a serious car accident where Schmerber lost control of his vehicle and struck a tree, injuring a passenger and himself. Upon arriving, a police officer smelled alcohol on the defendant's breath and noticed his eyes were "bloodshot, watery, sort of a glassy appearance." *Id.* at 769. Both occupants were transported to the hospital, followed by the officer approximately two hours later. *Id.* There, the officer directed a physician to take a blood sample despite Schmerber's refusal to consent to the test. *Id.* at 758–59.

After being convicted, Schmerber argued that the admission of the blood test results violated his Fourth Amendment rights because he refused to consent. The Supreme Court acknowledged that "[s]earch warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* at 757. After noting that alcohol in the blood begins to dissipate shortly after consumption ends, the Supreme Court held the blood test—in that specific case—did not violate the Fourth Amendment because: 1) time had elapsed to take the defendant to the hospital for treatment, 2) time was spent investigating the accident, and 3) there was no time to secure a warrant from a magistrate. *Id.* at 770–71.

Nearly fifty years later, the Supreme Court revisited the exigency exception involving a drunk driver. In *McNeely*, a police officer stopped the defendant's truck at approximately 2:00 a.m. after observing it exceed the speed limit and cross the center line several times. 569 U.S. at 145. The driver displayed common signs of impairment—alcohol on his breath, bloodshot eyes, and slurred speech. *Id.* The driver admitted he had consumed "a couple of beers" at a bar earlier, and he failed a field sobriety test. The officer requested an onsite portable breath test, but the driver refused. Thereafter, the officer arrested the individual and headed toward the police station to conduct a breath test, but after the defendant indicated he would refuse, the officer drove to the hospital to obtain a blood sample. At the hospital, the officer informed him of the implied consent statute, but the defendant refused to provide a blood sample. *Id.* at 146. The lab technician obtained a blood sample at the officer's direction, which occurred nearly thirty minutes after the traffic stop. *Id.*

The Supreme Court rejected the State of Missouri's argument that the natural dissipation of alcohol in the blood created a per se exigent circumstance, thereby declining to establish a bright-line rule that drawing blood for evidentiary purposes without a warrant is constitutional. *Id.* at 152. Instead, the Supreme Court held that whether exigent circumstances permit warrantless blood testing is determined on a case-by-case basis under the totality of the circumstances. *Id.* at 156.

We agree with the trial court that exigent circumstances existed, and accordingly, we affirm McCall's conviction. As the court correctly noted, approximately ten police officers responded to a serious accident requiring extensive investigation. At least three officers were diverted to other calls shortly after arriving, as evening rush hour traffic proved particularly busy. While McCall argues that officers had ample time to obtain a warrant, McAlhany rightfully secured the scene and thoroughly investigated the accident before arriving at the hospital two hours later. We also do not believe obtaining a warrant was practical, as McAlhany testified it likely would have taken at least ninety minutes to obtain one after 5 p.m.

While *McNeely* makes it clear that the natural dissipation of drugs cannot by itself qualify as an exigency, the seriousness of the accident places this case much higher on the "exigency spectrum." *Mitchell*, 139 S.Ct. at 2533 (noting the car accident in *Schmerber* "heightened" the "degree of urgency common to all drunk-driving cases," thereby placing it higher on the "exigency spectrum"). Finally, unlike the trilogy of cases decided by the Supreme Court, officers quickly believed that McCall was impaired by a substance other than alcohol. While alcohol has a relatively steady dissipation rate, other substances dissipate much faster.[2] Without immediately knowing the substance's identity, officers could not possibly know how long it would remain in McCall's blood, thus increasing the urgency. We recognize any one fact alone may not support exigency; however, we find the trial court thoroughly analyzed the totality of the circumstances, especially given our deferential standard of review. *State v. Adams*, 409 S.C. 641, 647, 763 S.E.2d 341, 344 (2014) (applying a deferential standard of review of a motion to suppress based on Fourth Amendment grounds). Accordingly, we affirm McCall's conviction. Because we affirm based on exigent circumstances, we need not reach the question concerning whether a warrantless blood draw pursuant to section 56-5-2946 is constitutional.[3]

---

[2] A SLED toxicologist testified that the body metabolizes some drugs rapidly, such as cocaine and THC in marijuana, while alcohol dissipates at a steadier rate.

[3] While we leave this question for another day, we do note numerous courts have cast doubt on the constitutionality of similar implied consent statutes. *See Williams v. State*, 771 S.E.2d 373, 377 (Ga. 2015) ("[M]ere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant."); *State v. Moore*, 318 P.3d 1133, 1137 (Or. 2013), *opinion adhered to as modified on reconsideration*, 322 P.3d 486 (2014) ("Rather, for purposes of this opinion, we assume without deciding that it would be unconstitutional to "deem" defendant to have consented when he drove."); *State v. Yong Shik Won*, 372 P.3d 1065, 1080 (Haw. 2015) ("[I]n order to legitimize submission to a warrantless BAC test under the consent exception, consent may not be predetermined by statute, but rather it must be concluded that, under the totality of the circumstances, consent was in fact freely and voluntarily given."); *Commonwealth v. Myers*, 164 A.3d 1162, 1173 (Pa. 2017) ("In recent years, a multitude of courts in our sister states have interpreted their respective—and similar—implied consent provisions and have concluded that the legislative proclamation that motorists are deemed to have consented to chemical tests is insufficient to establish the voluntariness of consent that is necessary to serve as an

## CONCLUSION

We affirm McCall's conviction because exigent circumstances justified the warrantless blood draw.

**AFFIRMED.**

**KITTREDGE, JAMES and FEW, JJ., concur.  BEATTY, C.J., concurring in result only.**

---

exception to the warrant requirement."); *Byars v. State*, 336 P.3d 939, 946 (Nev. 2014) (holding Nevada's implied consent statute that permitted law enforcement to use force to obtain a sample and did not give the individual the right to withdraw consent could not be considered voluntary consent under the consent exception); *State v. Wulff*, 337 P.3d 575, 581 (Idaho 2014) ("[I]rrevocable implied consent operates as a per se rule that cannot fit under the consent exception because it does not always analyze the voluntariness of that consent."); *State v. Butler*, 302 P.3d 609, 613 (Ariz. 2013) (holding the Fourth Amendment requires consent to be voluntary and independent of an implied consent statute); *State v. Modlin*, 867 N.W.2d 609, 621 (Neb. 2015) (holding actual voluntary consent is required for a warrantless blood test to be reasonable and the proper inquiry is the totality of the circumstances, "one of which is the implied consent statute"); *but see People v. Eubanks*, ___ N.E.3d ___, 2019 IL 123525 (Ill. 2019) (holding a statute that authorizes a compelled blood draw when an accident has resulted in death or serious bodily injury is not facially unconstitutional, but may be unconstitutional as applied in unusual cases, in light of the general rule adopted in *Mitchell* that exigent circumstances normally would exist).