# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Charles Dent, Petitioner.

Appellate Case No. 2024-000355

―――――――――

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

―――――――――

Appeal from Beaufort County
Alex Kinlaw Jr., Circuit Court Judge

―――――――――

Opinion No. 28289
Heard April 23, 2025 – Filed July 16, 2025

―――――――――

## AFFIRMED IN PART, REVERSED IN PART

―――――――――

E. Charles Grose Jr., of Grose Law Firm, of Greenwood, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General John Benjamin Aplin, both of Columbia; and Isaac McDuffie Stone, III, of Bluffton, all for Respondent.

―――――――――

**CHIEF JUSTICE KITTREDGE:** Indictments matter. In criminal trials, where the weight of the government comes to bear against an individual citizen, indictments are a foundational part of that citizen's constitutional right to due

process: they put the citizen on formal notice of the charges against him and the theories the government intends to present at trial to show the citizen violated the law, thereby allowing the citizen to prepare a defense. A conviction based on unindicted conduct cannot stand.

Here, petitioner Charles Dent was convicted of three child sex crimes all stemming from his alleged abuse of his granddaughter (the victim) when she was around eight to nine years old. Two of the convictions—two counts of dissemination of obscene material to a minor—were properly indicted and will stand. One of the convictions—criminal sexual conduct with a minor (CSCM) in the first degree— was the result of the State accusing Dent of one thing in the indictment but pursuing an alternative theory of liability during closing arguments. That conviction must be set aside, for as heinous as the allegations against Dent were, convicting him without first affording him his right to due process is anathema to the United States and South Carolina Constitutions. We therefore affirm in part and reverse in part.[1]

## I.

### A.

Prior to the events in question, Dent's daughter (L.M.) lived in Florida with her two children (the victim and the victim's older brother). However, in 2012, following a series of family tragedies, L.M. and her children moved to South Carolina to be closer to their extended family, renting a two-bedroom townhouse (House 1). At Dent's request, the next year, L.M. and the children moved to a four-bedroom townhouse (House 2), which they rented for approximately one year. During these two years, Dent, who lived in Alabama, would periodically visit L.M. and the children for a week at a time and, after they moved into House 2, would stay in one of the downstairs bedrooms while visiting.

In May 2014, L.M. began dating a former law enforcement officer and private investigator. Within a few months, L.M.'s boyfriend noticed the victim exhibited a pattern of overt sexual behavior inappropriate for a girl of her age (at the time, nine years old), including groping his genitals and frequently attempting to kiss and hug him. As a result, he became concerned and asked the victim "if anyone had ever done anything inappropriate to her." The victim disclosed that Dent had sexually

---

[1] We also reject Dent's procedural challenge and argument that an identical panel of the court of appeals must decide a case each time an appeal from that case is docketed before that court.

abused her, which he and L.M. in turn reported to law enforcement.

Following her disclosure, the victim underwent a forensic interview. In the interview, the victim stated Dent had repeatedly kissed her and fondled her chest, vagina, and bottom both over and under her clothes. She also detailed one instance in which Dent went into the bathroom, took pictures of his genitals, showed the pictures to the victim, and asked her to take pictures of her own genitals. She further explained that on a different day, Dent forced her to watch a pornographic video with him. Finally, the victim stated that Dent had taken pictures of her vagina while she was sleeping and later showed the pictures to her.[2]

A few weeks later, the victim made a second disclosure to L.M.'s boyfriend and, as a result, underwent a second forensic interview. During that second interview, the victim revealed Dent forced her to perform fellatio on him "more than once"—yet the victim detailed only one instance of fellatio, which occurred *at House 1*; she never discussed any instances of fellatio that occurred *at House 2*. The absence in the forensic interviews of an allegation of fellatio occurring at House 2 is significant in the disposition of this appeal.

Beyond the claim of fellatio occurring at House 1, the victim reported to the forensic interviewer that Dent digitally penetrated her vagina and performed cunnilingus on her "more than one time" in House 2. The victim further stated Dent forced her to touch his penis with her hand multiple times at both House 1 and House 2.

The State subsequently indicted Dent on two charges of disseminating obscene material to a minor related to showing the victim pictures of his genitals and the pornographic movie. The State also indicted Dent on two charges of CSCM in the first degree but limited the offenses to fellatio, alleging that Dent committed a "sexual battery upon a minor who was less than eleven years of age, to wit: *fellatio* on [Dent] by [the victim]."[3] (Emphasis added). Whether by design or oversight, the

---

[2] None of the alleged pictures of Dent's or the victim's genitals were ever recovered on any of his electronic devices (and, consequently, were never introduced at trial), although a "large amount" of other, unrelated child pornography was discovered. Based on his alleged possession of this unrelated child pornography, Dent faced additional criminal charges in Alabama. However, following his criminal trial and convictions in South Carolina, those charges were dismissed.

[3] The term "sexual battery" as used in this case is an element of CSCM in the first degree. *See* S.C. Code Ann. § 16-3-655(A)(1) (2015) (defining CSCM in the first degree as a "sexual battery" of a minor under the age of eleven); *id.* § 16-3-651(h)

dates listed in the *first* CSCM indictment corresponded to the time the victim lived in House 2, and the dates listed in the *second* CSCM indictment corresponded to the time the victim lived in House 1.

## B.

At trial, the State introduced both forensic interview videos into evidence and played them for the jury. Likewise, the victim testified and again detailed the various sexual assaults she had previously described in the forensic interviews. As to the fellatio allegations in particular, she stated that Dent made her "lick his private parts" "*once*." (Emphasis added). When asked to elaborate, she said, "It's hard to explain. I'm sorry." On cross-examination, the victim reiterated that Dent had only forced her to "lick his private parts" one time. The victim never testified at which of the two townhouses (House 1 or House 2) the "one" instance of fellatio occurred. Thus, the only evidence in the record concerning the location of where fellatio occurred comes from the forensic interviews, where the victim referenced only House 1.

At the close of the State's case-in-chief, Dent moved for a directed verdict as to the first CSCM indictment (fellatio at House 2), arguing there was no evidence that he had forced the victim to perform fellatio at House 2. Specifically, Dent stated that in the second forensic interview, the victim only described one instance of fellatio that occurred at House 1, and there had been no other testimony (at trial or in the forensic interviews) that she was forced to perform fellatio at House 2. Moreover, although the State introduced evidence of other, *unindicted* sexual batteries, Dent asserted the CSCM indictments were expressly limited to fellatio, and, therefore, convicting him based on evidence of any other sexual battery would constitute a material variance from the indictment. The trial court denied Dent's motion for a directed verdict without explanation.

During closing arguments, Dent emphasized to the jury the importance of the indictments, stating they were "the way that the State tells a person what they're charged with and what they have to come to court and defend." Dent asserted the CSCM indictments required the State to specifically prove Dent forced the victim to perform fellatio at House 1 (for the second indictment) and House 2 (for the first indictment). After replaying portions of the victim's forensic interviews to the jury,

---

(2015) (defining "sexual battery" as, in relevant part, "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body").

Dent asserted that the victim consistently talked about performing fellatio only in one place (House 1), concluding, "But the point is from the get-go, you can take one of these [indictments] off the table because her statements don't even support that it happened at both locations."

In its closing argument,[4] the State also expanded on the language of the CSCM indictments, contending the indictments were not limited to the specific allegation of fellatio. According to the State, proof of *any* sexual battery included in section 16-3-651(h)—including digital penetration and cunnilingus—was sufficient to convict Dent. Over Dent's objections, the trial court accepted the State's expansive reading of the indictment language and instructed the jury as to the full definition of sexual battery set forth in section 16-3-651(h), including digital penetration, cunnilingus, and fellatio.

Ultimately, the jury found Dent guilty of the first CSCM charge (fellatio at House 2) and both dissemination charges. The jury acquitted Dent of the second CSCM charge (fellatio at House 1). The trial court sentenced Dent to thirty years' imprisonment on the CSCM charge and fifteen years' imprisonment for each dissemination charge, the sentences all to be run concurrently.

## C.

Dent appealed, raising eleven issues for the court of appeals' consideration. Chief Judge Williams, Judge Thomas, and then-Judge Hill comprised the panel that heard oral arguments in the initial appeal. The court of appeals reversed on a single issue involving the circumstantial-evidence jury charge. *State v. Dent*, 434 S.C. 357, 863 S.E.2d 478 (Ct. App. 2021). The State and Dent cross-appealed, with the State raising the circumstantial-evidence jury charge ruling and Dent raising his remaining ten issues on appeal as additional sustaining grounds. We granted the State's petition for a writ of certiorari and reversed the court of appeals' decision, remanding the matter to the court of appeals to address Dent's remaining ten issues on appeal. *State v. Dent*, 440 S.C. 449, 892 S.E.2d 294 (2023).

In the interim, Justice Hill was elected to serve on this Court and, therefore, could not remain a part of the original panel that decided Dent's first appeal. As a result, on remand, the new court of appeals' panel assigned to Dent's case was comprised of Chief Judge Williams, Judge Thomas, and Judge Hewitt. The court of appeals

---

[4] Because Dent presented his own case-in-chief, the State had the first and the final closing argument during trial.

declined to hear oral arguments for the second appeal, instead considering the matter as a submitted case. Ultimately, the court of appeals found no merit in any of Dent's remaining arguments and affirmed his convictions. *State v. Dent*, 442 S.C. 38, 897 S.E.2d 46 (Ct. App. 2023).

We granted Dent's petition for a writ of certiorari to review seven of his remaining issues on appeal.

## II.

We begin by examining the indictments. An indictment is a critical document that must state the charged offense with particularity, apprising a defendant of the elements of that offense. *State v. Baker*, 411 S.C. 583, 588–89, 769 S.E.2d 860, 863–64 (2015) (citations omitted). As we have previously explained,

> In South Carolina, it is a rule of universal observance in administering the criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment. *A material variance between charge and proof entitles the defendant to a directed verdict*; such a variance is not material if it is not an element of the offense.

> While a conviction may be sustained under an indictment which is defective because it omits essential elements of the offense, such is not true when the indictment facially charges a complete offense and the State presents evidence which convicts *under a different theory than that alleged*. A conviction under the latter circumstance violates principles of due process because the State has failed to prove beyond a reasonable doubt every fact necessary to constitute *the crime with which a defendant was charged*. . . . *See* 41 Am. Jur. 2d *Indictments & Informations* § 256 (2005) ("A material variance that violates a defendant's substantial right to be tried only on charges presented in an indictment constitutes fatal error and warrants a reversal on an appeal of a judgment of conviction of the offense not charged in the indictment.").

*Bailey v. State*, 392 S.C. 422, 433–34, 709 S.E.2d 671, 677 (2011) (cleaned up) (emphasis added).

In *Bailey*, the defendant (Bailey) was indicted for homicide by child abuse, which by statute can be committed as a result of abuse or neglect. *Id.* at 425 & 425 n.1, 709 S.E.2d at 672 & 672 n.1 (citing S.C. Code Ann. § 16-3-85 (2003)). The

indictment, however, charged Bailey with only physical abuse of the child, not neglect. *Id.* at 428 n.4, 709 S.E.2d at 674 n.4. Nonetheless, the trial court instructed the jury—without objection by defense counsel—that it could convict Bailey if he "caused the death of the child by neglect [*or*] abuse." *Id.* at 429, 709 S.E.2d at 675. The jury found Bailey guilty, and he eventually and successfully applied for post-conviction relief (PCR), claiming his counsel was ineffective for failing to object to the trial court's jury instruction.[5] *Id.* at 431, 709 S.E.2d at 676.

In reversing the PCR court's initial denial of relief, we explained the trial court improperly enlarged the indictment "in direct contravention of the specific act alleged in the indictment [which], thus, constituted a material variance or a 'constructive amendment' to the indictment." *Id.* at 435–36, 709 S.E.2d at 678. We found counsel's failure to object to that enlargement in the jury instruction was not a valid trial strategy and, therefore, constituted deficient performance. *Id.* at 436–37, 709 S.E.2d at 678–79. Likewise, we held Bailey was prejudiced by the failure to object "[b]ecause the [jury] instructions created a material variance between the State's evidence and the allegations in the indictment." *Id.* at 437, 709 S.E.2d at 679.

The *Bailey* principle is essentially one of due process and therefore has broad application beyond the homicide by child abuse statute, including in the CSCM statutory context. To establish the crime of CSCM in the first degree, the State generally must prove that the defendant committed a "sexual battery" on a child eleven years of age or younger. S.C. Code Ann. § 16-3-655(A)(1).[6] A "sexual battery" is statutorily defined as including digital penetration, cunnilingus, and fellatio, among other acts. S.C. Code Ann. § 16-3-651(h). If the State elects to charge a particular sexual battery in the indictment, it cannot thereafter expand the indictment to include other acts of sexual battery. Rather, when the State chooses to allege a specific act of sexual battery, it undertakes the burden of proving *that* act of sexual battery. It necessarily follows, as in *Bailey*, that the State cannot secure a conviction based on other, unindicted sexual batteries. *See Bailey*, 392 S.C. at 433–36, 709 S.E.2d at 677–78 ("[B]y including a more specific description [of a particular

---

[5] *See generally Strickland v. Washington*, 466 U.S. 668, 687 (1984) (setting forth the two-pronged test to establish ineffective assistance of counsel, namely, that (1) trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant).

[6] While there is another way to establish CSCM in the first degree, *see* S.C. Code Ann. § 16-3-655(A)(2), it is not relevant to the facts presented in this case, and we therefore do not address it in this opinion.

type of child abuse in the indictment], the State undertook the burden of proving the specific allegations to obtain a conviction." (quoting *Castillo v. State*, 7 S.W.3d 253, 255 (Tex. Ct. App. 1999))).

Here, the State charged Dent with "commit[ting] a sexual battery upon a minor who was less than eleven years of age, *to wit: fellatio on [Dent] by [the victim]*."[7] (Emphasis added). The italicized phrase clearly narrows the specific sexual battery charged to only fellatio. Importantly, the narrowly drawn indictment charges a complete offense: if proven, forcing the victim to perform fellatio while she was eight or nine years old clearly constitutes CSCM in the first degree. Thus, by choosing to pursue a narrow, specific charge, the State could not seek a conviction under a different and expanded theory of sexual battery.

It is within this legal framework that we examine Dent's issues on appeal.

### III.

Dent first argues the trial court erred in failing to grant his motion for a directed verdict as to the first CSCM indictment. We agree.

As explained above, the only evidence that has any bearing on whether a verdict should have been directed on the first CSCM indictment is that establishing Dent forced the victim to perform fellatio on him at House 2.[8] During the forensic interviews, the victim stated Dent forced her to perform fellatio "more than once" but detailed only a single instance, which occurred at House 1. The victim offered no information about fellatio at House 2.[9] Likewise, at trial, the victim

---

[7] At trial, the State argued the phrase "to wit" meant "for example," and that therefore the CSCM indictments required the State to prove only that *a* sexual battery occurred, not fellatio in particular. The State's loose interpretation of indictments must respectfully be rejected, for it would not provide an accused adequate notice of the specific offense being charged, resulting in an unconstitutional guessing game.

[8] Recall the jury acquitted Dent of the second CSCM indictment regarding any possible fellatio that occurred at House 1.

[9] Rather, the victim disclosed that Dent had digitally penetrated her vagina and performed cunnilingus on her at House 2. Of course, both of those acts would constitute a "sexual battery" sufficient for the State to indict Dent on—and for a jury to convict him of—CSCM in the first degree. However, for whatever reason, the State elected not to indict Dent for those other acts of sexual battery, and those uncharged acts cannot serve as a basis on which to deny Dent's motion for a directed

unequivocally testified Dent forced her to perform fellatio "once" and did not specify at which house the fellatio occurred. Given her detailed explanation in the second forensic interview of fellatio at House 1, we find the State introduced no evidence of the sexual battery of fellatio *at House 2*. We therefore hold the trial court erred in failing to direct a verdict in Dent's favor as to the first indictment (fellatio at House 2). *See State v. Evans*, 322 S.C. 78, 81, 470 S.E.2d 97, 99 (1996) ("A material variance between the charge and the proof entitles the defendant to a directed verdict."); 41 Am. Jur. 2d *Indictments & Informations* § 246 ("[R]eversal is required where, although the conviction is within the statutory prohibition, it is outside the indictment, by which the theory of criminal liability effectively is narrowed.").

## IV.

The second error we address is inextricably connected to the error in failing to grant a directed verdict. Specifically, Dent argues that because the indictment only listed a single sexual battery—fellatio—it was improper for the trial court to instruct the jury on all of the other, unindicted sexual batteries sufficient to support a CSCM conviction. We agree.

Again, the CSCM indictments against Dent limited the sexual battery that could serve as a basis for his conviction to fellatio alone. Nonetheless, over Dent's repeated objections, the State informed the jury during closing arguments that the indictments were not restricted to fellatio, and the jury could use evidence of *any* sexual battery— including digital penetration and cunnilingus—to convict Dent. The State then emphasized the evidence of digital penetration and cunnilingus in the forensic interviews and the victim's trial testimony, concluding "[Dent] committed . . . several sexual batteries over a year period on [the victim]."

While the State's remarks unquestionably amounted to a material variance to the indictment, the trial court acquiesced to that variance, instructing the jury as to the full statutory definition of sexual battery, including not only fellatio but also digital penetration and cunnilingus. In doing so, the trial court impermissibly enlarged the indictment, creating a material variance between the evidence sufficient to convict Dent and the specific allegations in the indictment. *See Bailey*, 392 S.C. at 434, 709 S.E.2d at 677 ("A material variance that violates a defendant's substantial right to be

---

verdict. *See* 41 Am. Jur. 2d *Indictments & Informations* § 246 (2025) (explaining an appellate court must reverse a conviction where, even if the acts underlying a conviction are illegal, those acts are outside the theory of liability set forth in the indictment); *cf. Bailey*, 392 S.C. at 433–36, 709 S.E.2d at 677–78.

tried only on charges presented in an indictment constitutes fatal error and warrants a reversal on an appeal of a judgment of conviction of the offense not charged in the indictment." (quoting 41 Am. Jur. 2d *Indictments & Informations* § 256)).

## IV.

We now turn to Dent's final argument, which is a procedural challenge to the court of appeals' handling of this case on remand from this Court. Dent argues that because Justice Hill did not participate in the second court of appeals' decision due to his election to this Court, "a quorum of the Court of Appeals did not hear the oral argument that led to the decision in this case."[10] We disagree.

Section 14-8-80(d) of the South Carolina Code (2017) provides, "On a panel [of the court of appeals], three judges shall constitute a quorum, and the concurrence of a majority is necessary for the reversal of the judgment below." In the absence of a quorum, the court of appeals cannot take any valid action. *State v. McMillian*, 349 S.C. 17, 20, 561 S.E.2d 602, 603 (2002) (per curiam). Thus, a quorum is required "throughout the proceedings," from hearing (or submitting) the case all the way through the issuance of the opinion. *Anderson Cnty. v. Preston*, 427 S.C. 529, 532, 539, 831 S.E.2d 911, 912, 916 (2019) (vacating due to a lack of quorum a court of appeals' opinion in which then-Chief Judge Few sat for the oral argument but was elected to this Court prior to issuance of the opinion, and the opinion was signed only by the remaining two judges on the panel). Nonetheless, "Technically, neither due process nor any other provision of law requires oral argument in a given case. Each judge or appellate panel is entitled to make the decision in each case whether oral argument would be helpful." *Stasi v. Sweigart*, 434 S.C. 239, 258, 863 S.E.2d 669, 679 (2021); Rule 215, SCACR (noting an appellate court may decide any case without oral argument so long as it finds oral argument would not assist the court in resolving the appeal).[11]

---

[10] Dent contends that there were two options in order to ensure the court of appeals had a quorum following this Court's remand of the first appeal. First, Dent asserts Justice Hill could have again sat with the remainder of the original panel of the court of appeals that decided this case (Chief Judge Williams and Judge Thomas). Second, in the alternative, Dent suggests that because the original panel held oral arguments, the new panel was required to rehear oral arguments.

[11] There is similarly no rule requiring the court of appeals to note in its opinions whether it has decided the matter without oral arguments, although the court of

No provision of law requires the same panel of the court of appeals to hear a remanded appeal. It is true that, oftentimes, the same panel will hear a remanded appeal purely for convenience's sake, with the thought being that the same panel will already be familiar with the case. However, because the law does not mandate the same panel of the court of appeals to hear a case, then so long as *a* panel of three judges participates in all aspects of the case—from the time the case arrives at (or is remanded to) the court of appeals through the issuance of the opinion—a quorum is present. That panel may then take any valid action it desires, including opting to submit the case either initially or on remand. Rule 215, SCACR ("The appellate court may decide *any* case without oral argument if it determines that oral argument would not aid the court in resolving the issues." (emphasis added)).

Here, a quorum of the court of appeals consisting of three judges—Chief Judge Williams, Judge Thomas, and Judge Hewitt—participated in each step of the case following the remand. We therefore reject Dent's argument that the court of appeals' opinion is invalid due to a lack of a quorum.

## V.

We end where we began: indictments matter. The law does not mandate perfection in the drafting of indictments, but it does require fair notice of the charge against the accused. Here, rather than charging Dent with all the sexual batteries alleged in the victim's forensic interviews, the State opted only to indict Dent for the sexual battery of fellatio. That choice mattered. We fully understand the horrific nature of the multitude of uncharged acts of sexual abuse allegedly committed by Dent on the victim. Nonetheless, as a Court, we must be guided by the law and not a sliding scale of sympathy based on the appalling nature of the alleged offenses.

Due to the trial court's erroneous decisions to deny Dent's motion for a directed verdict as to the first CSCM indictment and broadly charge the jury as to the full definition of "sexual battery" despite the narrowly drawn indictment, we reverse Dent's conviction for CSCM in the first degree. However, because neither of these errors affected Dent's convictions for dissemination of obscene material to a minor, we do not disturb those convictions.[12] We therefore affirm in part and reverse in

appeals tends to insert a footnote to that effect when resolving most submitted cases.

[12] We note Dent raises four other issues on appeal related to the admission of testimony and evidence. Because the directed verdict and jury charge issues are dispositive of the CSCM conviction, we decline to address the remaining issues as they relate to the CSCM conviction. *See Futch v. McAllister Towing of Georgetown,*

part.

**AFFIRMED IN PART, REVERSED IN PART.**

**FEW, JAMES, VERDIN, JJ., and Acting Justice Gregory W. Anderson, concur.**

---

*Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).  Dent does not argue in his brief that any of those four remaining issues affect the charges for dissemination of obscene material to a minor.